**Robert H. MOURNING, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**McDonnell Douglas Corporation, Intervenor.**

**No. 73-1719.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 16, 1974.

Decided Oct. 17, 1974.

Daniel M. Katz, Washington, D. C., with whom Gary Green, Washington, D. C., was on the brief, for petitioner.

---

John H. Ferguson, Atty., N. L. R. B., with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., were on the brief for respondent.

Louis Lieber, Jr., Santa Monica, Cal., entered an appearance for intervenor.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

McDonnell Douglas Aircraft Corporation fired Robert Mourning on November 15, 1968. Mourning was at that time involved in an organizing drive on behalf of the Air Line Pilots Association at McDonnell Douglas' Long Beach facilities. On May 9, 1969, within the time limit prescribed by § 10(b) of the National Labor Relations Act,[1] Mourning through his attorney filed an unfair labor practice charge against McDonnell Douglas alleging that he had been fired because of his union activity, in violation of § 8(a)(3) of the NLRA.[2] After an investigation, the Regional Director

of the Labor Board's Office of the General Counsel on August 7, 1969 refused to issue a complaint on behalf of Mourning, stating among other things that the Company official responsible for Mourning's discharge probably did not know of Mourning's union activity. Again through his attorney, Mourning filed an appeal from this decision with the General Counsel's Office of Appeals. On September 22, 1969, that Office denied Mourning's appeal basically on the grounds stated by the Regional Director. On January 14, 1970, Mourning wrote a letter *personally*, not through his attorney, to the Office of Appeals castigating the Director of the Office of Appeals for his alleged misdeeds and promising to seek criminal indictments against those responsible for the failure to issue a complaint in his behalf. This letter, reproduced in Appendix I, raised no new issue of fact or law and can hardly be viewed as anything but an angry letter from a disappointed suitor. The Office of Appeals treated this letter as a motion for reconsideration and on January 22, 1970, barely after receiving it, denied this "motion for reconsideration" as not timely filed.[3]

---

1. 29 U.S.C. § 160(b) (1970).

2. 29 U.S.C. § 158(a)(3) (1970).

3. This denial was pursuant to Rule 102.19(c), 29 C.F.R. § 102.19(c) (1973) which requires that motions for reconsideration be filed within ten days of the decision by the Office of Appeals. The Rule 102.19(c) in effect at the date of Mourning's "motion for reconsideration", 32 Fed.Reg. 9548 (1967), and the Rule now both excepted motions for reconsideration on the basis of newly discovered evidence from the 10 day requirement. This proviso does not apply to Mourning's letter since the letter did not raise new issues of fact or law and presented no new evidence. While the letter did discuss factual matters not raised in Mourning's original appeal through his counsel of the Regional Director's decision, see Appeal of Regional Director's Decision Not to Issue Complaint, Mourning v. McDonnell Douglas Corp., No. 31–CA–1435 (N.L.R.B. filed Aug. 22, 1969), reproduced in Joint Appendix at 7–8, those factual matters had been considered by the Regional Director, since the Office of Appeals considered those matters in

deciding to uphold the Regional Director's decision. Letter to John P. O'Brien from Irving M. Herman, Director of the Office of Appeals, Sept. 22, 1969, reproduced in Joint Appendix at 8–9.

Mourning's "motion for reconsideration" also appeared to be inconsistent with another provision of Rule 102.19(c), that motions for reconsideration state the alleged error with particularity. It is virtually impossible to tell exactly what error Mourning perceived in the General Counsel's original refusal to issue a complaint. He did attack three apparently factual determinations by the Regional Director but nowhere argues that these factual errors, if errors they be, were otherwise sufficient to justify issuing a complaint. Indeed, it would appear that the Regional Director's determination that the Company official responsible for Mourning's discharge did not know of his union activity is sufficient ground for the Regional Director's decision. See NLRB v. Lexington Chair Co., 361 F.2d 283, 291 (4th Cir. 1966); Local 728, Teamsters v. NLRB, 131 U.S.App.D.C. 195, 403 F.2d 921, 923 (1968), cert. denied, 397 U.S. 935, 90 S.Ct. 943, 25

On March 11, 1970, Mourning now through his attorney filed a motion for reconsideration on the basis of newly discovered evidence indicating that the Company official responsible for Mourning's discharge had in fact known of Mourning's union activities. The Office of Appeals on June 5, 1970 treated this as a "second motion for reconsideration" and denied it on the basis of the Board's decision in Forrest Industries, Inc., 168 N.L.R.B. 732 (1967). Two years and four months later, pursuant to Mourning's further requests through his attorney the General Counsel reopened Mourning's appeal, reversed his earlier decisions and issued a complaint in Mourning's behalf. McDonnell Douglas in its answer and motion to dismiss presented to the Administrative Law Judge argued that Forrest Industries had been properly applied by the General Counsel when he had refused to entertain the "second motion for reconsideration." The Administrative Law Judge rejected this argument but the Labor Board permitted an interlocutory appeal and reversed the Administrative Law Judge, holding that Forrest Industries prevented the General Counsel from prosecuting the case.[4] The complaint was thus dismissed. We reverse and remand to permit the General Counsel to re-file the complaint on behalf of Mourning.

The Board's decision in this case consisted of two related holdings. First, the Board held that certain amendments to Board regulations issued in March of 1972 which would have permitted Mourning's "second motion for reconsideration" were not retroactive.[5] Second, and this is crucial to the case, the Board held that the ruling in *Forrest Industries* required dismissal of the complaint. This second holding is only implicit in the Board's opinion but nevertheless it is essential to the result since *no other basis for dismissing the complaint is discussed in the opinion.* The Board's result must stand or fall on the basis of the ruling in *Forrest Industries.*

*Forrest Industries* is a cryptic case considering the fact that it is the only case we have been able to locate and the only case that has been cited to us which permits dismissal of a complaint on the basis of a pre-existing motion for consideration. The two paragraph holding is reproduced in the margin.[6] While the case is far from self-explanatory, we construe it—as did the General Counsel in denying Mourning's "second motion for reconsideration", upon which the

L.Ed.2d 115 (1970). In any event, Mourning's own attorney did not feel the factual issues discussed in Mourning's petition were worthy of reconsideration since the appeal he filed did not re-open those issues. In short, the substance of the letter had only the most tenuous connection with the Regional Director's refusal to issue a complaint.

4. McDonnell Douglas Corp., 202 N.L.R.B. No. 65 (1973).

5. Rule 102.19(c) was amended in March of 1972 to permit a second motion for reconsideration based on newly discovered evidence. *See* 37 Fed.Reg. 4911 (1972). The Board considered this a modification of *Forrest Industries* but held that the modification was not retroactive.

6, Some flexibility of procedure is necessary to achieve the ends of justice under the Act and to afford parties full opportunity for submission of all evidence and arguments. But it is also important in the administration of the Act that procedural remedies be deemed exhausted at some point and a case closed.

We have considered all the circumstances in this case, including the allegations of the complaint, the nature of the materials offered to *support a second motion for reconsideration more than 3 months after the first such motion was denied,* and the General Counsel's reversal of action on such basis *approximately 6 months after the second motion* for reconsideration was filed. It is our view, upon considering all these circumstances, *that the General Counsel's rejection of the first motion for reconsideration was dispositive of this proceeding and, in any event, that it will not effectuate the policies of the Act to proceed further in this matter.* Accordingly and without reaching the merits of the unfair labor practices alleged, we shall dismiss the complaint in its entirety.

Forrest Industries, Inc., 168 N.L.R.B. 732 (1967) (emphasis added).

Board apparently relied in its own opinion— [7] to preclude *any second motion for reconsideration.* We adopt this construction for purposes of decision and do not mean to approve the rule of procedure it embodies. We do not construe *Forrest Industries* as establishing a general policy of laches, authorizing three member review panels to dismiss cases whenever the panel considers too much time has passed between the date of the alleged unfair labor practice and the issuance of the complaint.

We refer to this second possible construction because the Board suggests it to us in its brief. However, we cannot permit the Board's counsel to alter the ground of the Board's decision.[8] Furthermore, we would not sustain such a construction of *Forrest Industries* without a more explicit Labor Board statement that such was intended. This second construction alters the apparently well-settled rule that § 10(b) is the only statute of limitations on the issuance of unfair labor practice complaints [9] and installs a general policy of laches. We do not mean to intimate that the Board may not adopt, after full consideration, such a policy of laches. Indeed, the un-

conscionable delay in this case is strong evidence that perhaps such a policy is needed. However, we will not presume the existence of such a policy placing the rights of complaining parties on the diligence of the General Counsel [10] without a much clearer statement that the Board so intended.

■■ It follows from the foregoing that the only ground to support the Board's holding in Mourning's case is that Mourning had already filed one "motion for reconsideration" when he attempted successfully to persuade the General Counsel to reopen the case on the basis of newly discovered evidence. However, we cannot agree with the Board's characterization of Mourning's angry letter of January 14, 1970 as a motion for reconsideration. First, and most important, the letter was from Mourning personally, not from his attorney who had been Mourning's representative in the proceedings with the General Counsel. The letter was clearly not a thoughtful factual or legal presentation and simply repeated arguments made by Mourning's attorney in the original attempt to persuade the Regional Director to issue a complaint. Second, the letter

---

7. Letter to John P. O'Brien from Irving M. Herman, Director of the Office of Appeals, June 5, 1970, Joint Appendix at 15–16. Of course, we note that the General Counsel may reinstate a complaint where his original action in dismissing it was erroneous. *See* J. A. Bentley Lumber Co. v. NLRB, 180 F.2d 641, 642 (5th Cir. 1950). To the extent the Board's opinion in this case is a simple reliance on the General Counsel's erroneous view that *Forrest Industries* required dismissal of the complaint, it cannot stand once the General Counsel perceived his error and reinstated the complaint.

8. *See* SEC v. Chenery Corp. (I), 318 U.S. 80, 92, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

9. *See* Bryant Chucking Grinder Co. v. NLRB, 389 F.2d 565, 568 (2d Cir. 1967), *applying the dictum in* NLRB v. Katz, 369 U.S. 736, 748 n.16, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). The Board's attempt to distinguish *Bryant Chucking Grinder,* Brief for the NLRB at 10, n.2, is wholly unpersuasive since the case did not rely on lack of

prejudice to the charged party but rather reached the result it did in spite of prejudice to the charged party on the basis of a finding that Congress in § 10(b) was not concerned with that prejudice.

10. § 10(b) puts a statute of limitations on the actions of the *charging party* (six months) and not on the General Counsel. The view we take of *Forrest Industries* also places the rights of the complaining party on his *own* actions and not the actions of the General Counsel. To permit the General Counsel to negligently cause the elimination of the charging party's rights would raise very fundamental questions about the nature of the charging party's "rights" upon suffering the effects of an unfair labor practice and the nature of the General Counsel's prosecutorial responsibilities. We certainly will not wade into that deep water without a clearer statement that the Board has fully considered these difficult issues and has given us the benefit of its expertise.

did not comply with the Board's own procedural requirements for filing motions for reconsideration. In particular, the motion was not timely filed and that was the particular ground upon which the Office of Appeals predicated its swift denial of the "motion for reconsideration." [11] Third, we are very hesitant to attach draconian legal consequences to the ill-considered actions of a layman.[12] These three reasons together convince us that the Labor Board must be reversed. We do not consider whether any one of the reasons alone would be sufficient to support this result. We furthermore have no occasion to rule on the Board's decision not to give retroactive effect to its newly promulgated rules on motions for reconsideration.[13]

For the foregoing reasons, we conclude that the Board improperly relied on *Forrest Industries* in dismissing Mourning's complaint. We, therefore, reverse the Board's decision and remand to permit the General Counsel to re-file the complaint. McDonnell Douglas may, of course, move to dismiss the complaint on some ground other than the decision in *Forrest Industries,* if any such grounds exist.

So ordered.

---

11. *See* note 3 *supra.*

12. *See* Love v. Pullman Co., 404 U.S. 522, 526–527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) ; Gibbs v. Burke, 337 U.S. 773, 779–781, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949). We note that the Board itself purports to give a "liberal construction" to its own rules. *See* 29 C.F.R. § 102.121 (1973). We, of course, have no objection to the Board treating letters such as Mourning's as "motions for reconsideration" when such treatment will not injure the movant's rights.

13. *See* note 5 *supra.* We would have a serious question about the Board's decision in Mourning's case that *Forrest Industries* is inconsistent with the new Rule. *Forrest Industries* did not, as far as we can tell from the published opinion, involve a motion for reconsideration on the basis of newly discov-

## APPENDIX I

Jan. 14, 1970

Mr. Irving M. Herman, Chief
Office of Appeals
1717 Pennsylvania Avenue, N.W.
Washington, D.C.
Sir:

Re: McDonnell-Douglas Corporation
Case No. 31–CA–1435

Receipt of your letter denying an appeal in the above captioned case is hereby acknowledged.

Your failure to issue a complaint in this case is unacceptable and the case will remain open, and be presented to the N.L.R.B. upon such time as it is re-constituted with personnel willing to enforce the pertinent provisions of the National Labor Relations Act, as amended.

In your letter you stated that insufficient basis existed for a finding that the Company had violated the Act as alleged. You also stated evidence to the effect that I had been previously reprimanded for poor job performance, that my latest wage increase had been an automatic increase, that there had not been a double vacuum pump failure due to overboosting, as determined by the engine's manufacturer, other than Mourning's . . . . . . etc.

ered evidence. The Rule in effect at the time of Mourning's "second motion for reconsideration" treated motions on the basis of newly discovered evidence differently than other motions for reconsideration. This is consonant with the rules applicable to motions for new trials. *See* Fed.R.Crim.P. 33 ; Fed.R.Civ.P. 59(a). Since the Labor Board, as other administrative agencies, has no particular expertise in the area of fair procedures, *cf.* Ridge Radio Corp. v. FCC, 110 U.S.App.D.C. 277, 292 F.2d 770, 772 (1961), we would not be averse to a complete examination of the advantages and disadvantages of the Board's retroactivity decision, if such were necessary to decision.

We furthermore do not intimate any opinion on the other arguments advanced by Mourning relating to a claimed infringement on the General Counsel's statutory prerogatives, except to state that these arguments are basically not relevant to this appeal.

You have apparently accepted the interesting and clever lies concocted by the Company.

I have never been reprimanded for poor job performance.

My latest wage increase was awarded Oct. 28, 1968 and I was terminated Nov. 15, 1968. The increase was MERIT, not automatic, as you stated erroneously.

It is physically impossible to overboost vacuum pumps. In this respect the N. L.R.B. has demonstrated technical incompetence in evaluating evidence.

I am further charging all officials of the N.L.R.B. who had anything to do with this case, with COLLUSIVE OFFICIAL LAWLESSNESS, in concert with officials of McDonnell-Douglas Corporation.

I will also ask for criminal indictments, where applicable, against those officials involved.

Very truly yours,

/s/ ROBERT H. MOURNING
By Robert H. Mourning