WARDLAW, Circuit Judge,
dissenting:
Nearly five months before the EEOC notified Brown of his right to sue in federal court, Brown’s counsel sent the Hawaii Civil Rights Commission a letter detailing fifty-two incidents where the Department of Public Safety failed to investigate complaints filed by Brown, while adequately investigating complaints filed by non-African American supervisors. Even though it is uncontested that the EEOC received a copy of this letter, the majority concludes that Brown did not exhaust his administrative remedies and that his counsel should have filed a third formal charge based on these additional incidents. Because the majority’s holding is contrary to the purpose of Title VU’s exhaustion requirement and our duty to construe Title VII charges liberally, I respectfully dissent.
As the majority itself notes, the purpose of Title VH’s administrative exhaustion requirement is to “afford[] the agency an opportunity to investigate the charge.” B.K.B. v. Maui Police Dep’t, 276 F.3d 1091, 1099 (9th Cir.2002). Despite the Supreme Court’s warning that “technicalities are particularly inappropriate in a statutory scheme [such as Title VII] in which laymen, unassisted by trained lawyers, initiate the process,” Love v. Pullman Co., 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the majority concludes that Brown has failed to exhaust his administrative remedies with respect to the fifty-two additional incidents of discrimination, even though Brown’s attorney notified the EEOC about the fifty-two incidents in a timely supplemental letter.
I.
This letter constituted a defacto request to amend Brown’s formal EEOC charge, even if the letter did not explicitly request an amendment to the formal charge. The applicable federal regulation permits amendment of EEOC charges:
A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendment and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.
29 C.F.R. § 1601.12(b) (emphasis added).
Brown’s formal EEOC charge, which he filed pro se, alleged that Brown was subjected to “racial harassment” on March 28, 2007, and that the actions of Sgt. Melvin Kia'aina in using the term Operation Mandingo “created a hostile and offensive working atmosphere.” The charge also explicitly alleged that the Warden failed to take appropriate corrective action in response to Brown’s complaint arising from the “Operation Mandingo” incident:
Warden Frank told me to write Sgt. Kia'aina a letter amounting to a Letter of Reprimand ... I believe that no corrective action was taken, as there was no prompt and thorough investigation of my complaint.... I also believe that my employer’s inaction has not deterred future racial harassment against me.
Our case law is clear that “[w]e are required to construe appellants’ EEOC charges ‘with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.’ ” Lyons v. England, 307 F.3d 1092, 1104 (9th Cir.2002) (citing B.K.B., 276 F.3d at 1100). Given our duty to construe EEOC charges *75 liberally, Brown’s formal charge sufficiently alleged the existence of a hostile work environment based on the Warden’s failure to take appropriate corrective action in response to Brown’s complaint. Once Brown retained legal representation, his counsel sent the letter reporting fifty-two more incidents supporting Brown’s hostile environment claim in order to “clarify and amplify,” 29 C.F.R. § 1601.12, the allegations made in Brown’s pro se charge.
To be sure, counsel’s letter should have explicitly requested amendment of Brown’s formal charge to include these additional incidents. The majority erroneously concludes that this technicality precludes Brown from showing that he has'[1] exhausted his administrative remedies.[1] However, the regulation does not set forth a particular procedure that must be followed to amend a charge, and the clear purpose of the letter was to amend Brown’s charge to include the “long history of complaints that were ignored while non-African American supervisor’s complaints were investigated.” Given that the purpose of the administrative exhaustion requirement is to ensure that the EEOC has the opportunity to investigate potential claims, this letter demonstrates that Brown exhausted his administrative remedies. Accordingly, the district court should have considered these fifty-two additional incidents when evaluating Brown’s hostile work environment claim.
II.
Further undermining the majority’s adherence to phantom technicalities to deny Brown his day in court, Brown in fact exhausted his administrative remedies. Even without considering his counsel’s supplemental letter, we have long held that a plaintiff exhausts his administrative remedies with respect to all allegations that are “ like or reasonably related to the allegations contained in the EEOC charge.’ ” B.K.B., 276 F.3d at 1100 (citing Green v. Los Angeles County Superintendent of Schs., 883 F.2d 1472, 1476 (9th Cir.1989)). We have interpreted this as including “all allegations of discrimination that either ‘fell within the scope of the EEOC’s actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.’ ” Id. at 1100 (emphasis in original) (quoting EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir.1994)). To determine whether new allegations are covered by the initial charge, “it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.” Id.
We must construe Brown’s pro se charge liberally, and, so construed, the initial charge sets forth a hostile work environment race discrimination claim based on the Department’s failure to respond to or investigate Brown’s complaint. An “EEOC charge does not demand procedural exactness. It is sufficient that the *76 EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts.” Sosa v. Hiraoka, 920 F.2d 1451, 1458 (9th Cir.1990) (internal quotation marks omitted). An EEOC investigation would reasonably be expected to look into whether other specific incidents had contributed to the allegedly hostile working environment. See, e.g. id. at 1457 (holding that while the plaintiffs EEOC charge referenced a specific adverse employment action, the charge also made general allegations of “intimidation, harassment, ... disparate treatment,” and a “pattern and practice of retaliating,” and that “[w]hen investigating harassment and retaliation against [him], the EEOC could reasonably have looked into” other incidents).
Moreover, all of the relevant factors indicate that these fifty-two incidents are like or reasonably related to the initial charge. Unlike prior cases in which a plaintiff attempted to set forth completely new grounds for discrimination with his new allegations, see Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir.2003) (holding that an allegation of disability discrimination is not reasonably related to an EEOC charge based on race, color, religion, sex, national origin, and/or age discrimination), here, all of the allegations concern discrimination based on race. Assuming that the acting Warden was responsible for investigating Brown’s complaints,[2] these additional allegations do identify the same individual, the Warden, as the perpetrator of the discrimination. In addition, the alleged discriminatory acts, all occurred at the same place, the Correctional facility, and they set forth a pattern of conduct beginning in 2002 and ending in May of 2007, just two months after the discriminatory event specifically mentioned in the EEOC charge.[3] It also bears noting that a plaintiffs claims are considered to “be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiffs original theory of the case.” Lyons, 307 F.3d at 1105 (internal quotation marks omitted). The Defendants themselves conceded in their filings before the district court that the plaintiffs EEOC charge was based on a hostile work environment theory. Thus, even if Brown’s counsel had not sent the supplemental letter, Brown has satisfied the administrative exhaustion requirement because the fifty-two additional incidents are like or reasonably related to the initial charge.
III.
We have previously recognized that a overly technical application of the administrative exhaustion requirement “would falsify the Civil Rights Act’s hopes and ambitions of providing a process lay people can use effectively to resolve discrimination complaints.” Sosa, 920 F.2d at 1458 (alteration omitted) (internal quotation marks omitted). Here, the majority precludes Brown from pursuing his hostile work environment claim, even though his counsel’s letter informed the EEOC of the fifty-two additional incidents, and these incidents are like or reasonably related to his pro-se charge filed with the EEOC. The majority erroneously concludes that Title VII can *77 be read in a hyper-technical manner as long as a Title VII plaintiff eventually acquires legal representation. This runs contrary to Title VII’s broad remedial goal of removing “artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.” Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).
I would reverse the district court’s grant of summary judgment on Brown’s hostile work environment claim, as the district court improperly failed to consider these additional incidents when evaluating the merits of this claim. The only reason that I do not request publication of the majority’s disposition is that its unjust, overly technical, and legally erroneous rule should not be extended to any other potential victims of Title VII discrimination.

. The majority concludes that Brown's counsel should have filed a third formal charge of discrimination with the EEOC based on these additional incidents. The majority fails to recognize that Brown could not file a third formal charge because the last incident mentioned in the letter occurred more than 300 days before the letter’s date. These incidents, however, are timely when considered as part of Brown’s initial charge. See National RR Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.”).

. The letter just refers to “Respondents” and does not indicate by name who was responsible for investigating Brown’s complaints.

. As recognized by the Supreme Court, hostile environment cases are based on conduct that occurs "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.” National RR Passenger Corp., 536 U.S. at 115, 122 S.Ct. 2061. Thus it is perfectly appropriate that these additional instances of discrimination occurred during a five-year period.