Mary L. LACY, Plaintiff,

v.

Lloyd BENTSEN, Secretary of the Treasury and United States Government, Defendants.

No. 93–CV–71736–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 16, 1993.

Scott A. Brooks, Detroit, MI, for plaintiff.

Jennifer M. Gorland, Asst. U.S. Atty., Detroit, MI, for defendants.

## *ORDER*

JULIAN ABELE COOK, Jr., Chief Judge.

On September 17, 1993, the Defendants, Lloyd Bentsen (the Secretary of Treasury) and the Government, filed a Motion for Summary Judgment. On October 21, 1993, the Plaintiff, Mary L. Lacy, filed an untimely response. A reply brief followed.

For the reasons that have been set forth below, this Court will grant the Defendants' motion.

I

This dispute is based upon a claim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. In 1979, Lacy began working at the Internal Revenue Service (IRS) in Detroit, Michigan as a computer operator with a grade level of seven (Grade 7). In November 1990, four positions for a Computer Programmer Analyst, Grades 9/11/12, became available. The qualification requirements for each of the positions at the Grade 9 level was one year of specialized experience at 8 or Grade 7, or in the alternative, a master's degree in a computer related field. Lacy had neither.

Lacy applied for the jobs and submitted an "Experience and Education Summary." She was not chosen to fill any of the openings. In fact, only one candidate qualified at the Grade 9 level for one of the four positions. The remaining three vacancies were not filled. Around the same time period, Lacy received six drop file notes, dated 11/06/90, 11/14/90, 11/14/90, 11/27/90, 12/19/90, and 01/10/91. All of these notes contained negative comments regarding Lacy's job performance.[1]

In April of 1991, Lacy filed a complaint with the Secretary of the Department of

---

1. This information surfaced during oral arguments after the Court's inquiry into the nature of "drop file" notes.

Treasury (Secretary) alleging employment discrimination based upon reprisal. In support of this claim, Lacy maintained that the IRS (1) found her ineligible for the Computer Programmer Analyst position, (2) would not allow her to complete her Career Development Plan, and (3) failed to confer any awards upon her in retaliation for an earlier administrative claim of discriminatory treatment that she had filed against the agency. On September 1, 1992, the Secretary issued a final decision of no discrimination. Lacy appealed the ruling to the Equal Employment Opportunity Commission (EEOC) who affirmed the finding of no discrimination. (EEOC decision, *Lacy v. Lloyd Bentsen*, Appeal No. 01924609 (March 19, 1993).)

On April 26, 1993, Lacy filed a Complaint with this Court. In her pleading, Lacy raises essentially the same issues that she presented at the administrative level (i.e., failure to promote, failure to provide opportunity to continue or complete her Individual Development Plan (IDP), and (3) failure to receive awards).

The Defendants' Motion for Summary Judgment is now before the Court for resolution.

## II

In support of their motion, the Defendants assert that Lacy failed to state a claim of retaliation because she cannot demonstrate that (a) she was qualified for any of the vacancies, (b) Debbie Hinsman or Sharon House, staffing specialists, had knowledge of her prior EEO activity when they made the hiring decision, or (c) she suffered an adverse employment action. In addition, they submit that Lacy has failed to exhaust her administrative remedies with respect to all of the remaining claims.

Lacy contends that the Defendants' motion is premature, claiming that discovery will lead to the requisite proof. Lacy does not take issue with the Defendants' allegation that she was not qualified for the vacancies. Rather, she claims that the IRS gave Harry Dillon, a co-worker who eventually received the job promotion, a year's notice and a job description which would prepare him to qualify for the future vacancies.

Lacy also maintains that she did file grievances for the performance award and, hence, the claim is not barred by a failure to exhaust administrative remedies. However, Lacy concedes that the claims regarding non-selection, drop file notes, disciplinary actions and intimidating remarks are barred by her failure to exhaust her administrative remedies. Nevertheless, she relies on them in support of her remaining three claims (i.e. failure to promote, interference with her Individual Development Plan (IDP), and failure to provide a merit increase).[2]

The Defendants defend their arguments, noting that Lacy has never sought EEO counseling and, thus, never exhausted the administrative remedies relating to her failure to obtain the detail that Dillon received. In addition, they argue that Lacy's failure to promote claim must fail because she was not qualified for the position. Moreover, they maintain that the IDP is neither an agreement nor a guarantee by the IRS to the employee that she will achieve all of her goals by the target dates or that a promotion will be awarded. According to the Defendants, the IDP is established to set achievement targets. They also note that it is the employee—not the employer—who maintains the plan and sets the goals and the target dates. Finally, the Defendants assert that there exists no nexus between Lacy's prior EEO activity and the failure to meet the goals in her IDP.

## III

Under Rule 56 of the Federal Rules of Civil Procedure[3], a summary judgment is to

---

2. Lacy agrees that the U.S. Government was not a proper party to this action and should be dismissed.

3. Fed.R.Civ.P. 56 provides, in pertinent part, that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

be entered if the moving party demonstrates that there is no genuine issue as to any material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company*, 948 F.2d 283 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *See also United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984). However, it is not the role of the court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir.1987). Rather, the judge's function is to determine whether there is a genuine issue for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 249, 250, 106 S.Ct. at 2510, 2511.

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citations omitted). Thus, the mere existence of a scintilla of supporting evidence is insufficient. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (citation omitted). The failure of a party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...." will mandate the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Federal Rule of Civil Procedure 56(e) provides that an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts which demonstrate that there is a genuine issue for trial. If he does not respond, a summary judgment, if appropriate, shall be entered against him. Fed. R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 321, n. 3, 106 S.Ct. at 2552, n. 3.

### A

■ Initially, Lacy contends that the Defendants' Motion for Summary Judgment is premature, maintaining that discovery will permit her to develop this case. However, she does not point to any specific facts that additional discovery would demonstrate or support. "[A] party cannot avoid summary judgment on the basis of nebulous assertions." *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 1993 U.S.App. LEXIS 14770 [*12] (6th Cir.1993) (citing *First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

This case was filed in April of 1993. She received an appointment of counsel on July 1, 1993. Notwithstanding, it does not appear that Lacy has conducted any discovery as of this date. Despite having had over three months in which to conduct discovery, she has been unable to offer the Court any facts in support of her claims. Lacy has had an adequate opportunity to conduct reasonable discovery in order to defend a motion for summary judgment. Moreover, there exists a comprehensive administrative record upon which Lacy could draw supporting evidence in defense of the motion. Therefore, her defense of prematurity must be rejected.

### B

■ Under Title VII, it "an unlawful employment practice for an employer to discriminate against any of his employees ... because [she] has ... made a charge ... under this subchapter." 42 U.S.C. § 2000e–3(a). In order to set forth a prima facie case of retaliation, a plaintiff must demonstrate that:

(1) she engaged in an activity protected by Title VII;

(2) the exercise of her civil rights was known by the defendant;

(3) the defendant took an employment action adverse to plaintiff; and

(4) there was a causal connection between the protected activity and the adverse employment action.

*Christopher v. Stouder Memorial Hospital,* 936 F.2d 870, 877 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991) (citing *Wrenn v. Gould,* 808 F.2d 493 (6th Cir.1987)); *see Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1134 (6th Cir.1990) (retaliation claim analogous to intentional discrimination claim). Once the plaintiff establishes a prima facie case by a preponderance of the evidence, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. *Zanders,* 898 F.2d at 1135. If such a reason for the adverse action is presented by the defendant, the presumption of discrimination which flows from the prima facie case is eliminated. *See Weems v. Ball Metal & Chemical Division, Inc.,* 753 F.2d 527, 529 n. 2 (6th Cir.1985). At this point, the burden shifts back to the plaintiff to demonstrate that the reason articulated by the defendant is merely a pretext for the retaliation. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

It is uncontested that Lacy engaged in protected activity when she filed a complaint with the EEOC. Accordingly, she has established the first prong of her prima facie case for retaliation on all three bases to be discussed herein.

### 1. *Failure to Promote in Retaliation for Prior EEO Activities*

■ There is no dispute that Lacy did not receive a promotion to one of the four Computer Programmer Analyst openings in 1990. However, Lacy has been unable to demonstrate that either House or Hinsman were aware of her prior EEOC activity when they made the decision not to offer her one of the job openings. House and Hinsman testified that they had no previous knowledge of her past complaints. (Defendants' Brief, Exhibit B at 466–68, 484–85.) In contrast, Lacy speculates that they knew of her prior conduct: "I believe that Sharon House and Debbie Hinsman were aware of my prior EEO activity because I believe each was involved in the settlement of my earlier EEO complaint." (Lacy Aff. at ¶ 1.) Yet, she fails to specify the involvement of House or Hinsman in the earlier EEO claim. Lacy's bare allegation of knowledge is insufficient to negate the sworn testimony of these two fellow employees.

Even if Lacy could demonstrate that House and Hinsman knew of her prior EEOC activities, she has not produced any causal link between their purported knowledge of her discrimination claim and the subsequent adverse employment decision. "A causal link requires the plaintiff to proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Zanders,* 898 F.2d at 1135 (citing *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982)). Although Lacy claims that the drop file notes, disciplinary actions and intimidating remarks support her claim, she has not provided this Court with any tangible evidence to evaluate the merit of her charge other than a memorandum which obligated her supervisor to remove the November 26 and 27, 1990 drop file notes. This directive was addressed to Pansy Fowler, not House or Hinsman. No reasonable connection can be made to the vacancy position decisions on the basis of this letter.

Ultimately, the Court is left to consider Lacy's pleadings. A review of the documents reveal that she has failed to set forth sufficient evidence or facts upon which to raise an inference that her prior EEO complaints were the bases for her inability to receive a promotion.

■ Even if Lacy can establish a prima facie case for the IRS' failure to promote her on the basis of retaliation, the Defendants have submitted a legitimate, nondiscriminatory reason for the decision; namely, Lacy was not qualified for the position. It is uncontested that the vacancies required one year experience or a master's degree in a computer related field. Lacy admits that she had neither and "[i]f the job promotions ... require one year experience in computer programming, I do not qualify for the above promotions." (Lacy's Response at 2; Lacy Aff. at 3, filed April 26, 1993.)

At this point, the burden shifts back to Lacy to demonstrate that the reason that had been advanced by her employer was merely pretextual. She offers no argument on this prong. In opposition to a motion for summary judgment, the non-moving party may not rest upon her pleadings. Fed. R.Civ.P. 56(e). Rather, the non-movant must set forth specific facts which demonstrate that there is a genuine issue of a material fact for trial. *Id.* Because Lacy has not properly responded, a summary judgment is appropriate on the claim of failure to promote in retaliation for her prior EEO activity.

■ Under the rubric of the failure to promote, Lacy raises a claim for the first time; namely, that she was treated differently than similarly situated individuals in that she was not offered an opportunity which was given to her co-worker, Dillon. "When a claimant in a Title VII case does not have an attorney, courts must give a broad reading of the charge before the EEOC." *Cameron v. Board of Education, Hillsboro County*, 795 F.Supp. 228, 234 (S.D.Ohio 1991) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir.1991)).[4] Even a broad reading of Lacy's allegations to the EEOC does not reveal a claim for disparate treatment. She never alleged a failure to be offered the detail which Dillon received. The allegation is not even present in her Complaint to this Court. Rather, it was raised for the first time in her responsive pleading.

■ In order for a federal court to have subject matter jurisdiction of Title VII claims, the claimant must exhaust her administrative remedies. *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Ang*, 932 F.2d at 545. If the claim is not presented to the EEOC, it may not be submitted to the Court. *Ang*, 932 F.2d at 545 (citing *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir.1985)). Because Lacy did not raise this claim in her administrative proceedings, she has failed to exhaust her administrative remedies. Thus, since she has failed to exhaust her administrative reme-

dies, this Court lacks jurisdiction over Lacy's disparate treatment claim.

### 2. *Failure to Receive Opportunity to Continue or Complete her IDP*

■ Next, Lacy contends that she was denied an opportunity to continue or complete her IDP in retaliation for her prior EEO activity. However, she does not point to any specific individual who allegedly prevented her from completing the IDP.

It is uncontested that Ernestine Baker, Lacy's immediate supervisor, possessed knowledge of Lacy's prior complaints. Yet, Baker denies withholding any opportunities from Lacy in relation to the continuance of her IDP. (Defendants' Brief, Exhibit B at 503–05.) However, Baker does indicate that she denied Lacy's request to attend a "learning lab" due to a work overflow on at least one occasion. *Id.* at 537, 540–41. In addition, Samuel Smith, Program Manager, and Arthia Tubbs, Branch Chief, testified that Lacy was given and allowed to complete any training or development assignments that she requested. *Id.*, Exhibit A at 265, 266.

In contrast, Lacy attests that she was never given the opportunities listed in the administrative records at pages 351–53. She also challenges the accuracy of the record at page 350. In order to evaluate her position, it is necessary to understand the purpose of an IDP and the obligations that it creates. An IDP sets forth goals to which the employee desires to strive. It is the employee, with the assistance of the Chief of the Training and Development Branch, who prepares the IDP. (Defendants' Reply, Exhibit D.) There is no commitment by the employer that all of the employee's goals will be met. Rather, "the final responsibility for accomplishing objectives of the IDP rests with the employee." *Id.* In addition, the Servicewide Training and Development Programs Handbook specifically states that "workload demands may dictate when an employee can undertake a learning activity and how much official time can be devoted in any particular period." *Id.* Based on the foregoing, it was up to Lacy to request the opportunity to participate in the training or development

---

**4.** The Court assumes that Lacy did not have an attorney at the administrative level because she received an appointment of counsel, subsequent to the filing of the Complaint.

program. Here, Lacy does not allege that she made any such requests or that any of her requests were denied.

Because the Defendants were not obligated to actively ensure that Lacy achieved her targets, she has failed to present evidence which is sufficient to demonstrate that she was denied an opportunity to continue or complete her IDP. Baker's single denial was appropriate given the work situation which took priority at the time. The record does not provide any support for Lacy's alleged deprivation of the opportunity to continue or complete her IDP. Therefore, she has not proffered the requisite adverse employment action that is required to establish a prima facie case of retaliation.

### 3. *Failure to Receive Awards*

██ Finally, Lacy claims that she was denied merit awards in retaliation for her prior EEO activity. It is uncontested that Lacy did not receive the merit increases in 1989 and 1990. However, the Defendants' submit that she failed to exhaust her administrative remedies with regard to this claim.

The decision to award the increases were based on her 1989 and 1990 evaluations. In order to receive a performance award, an employee must receive a rating of 4 on a 1–5 scale. A review of her evaluations reveals that Lacy did not qualify for the award. However, Lacy takes issue with the accuracy of the evaluations. Under applicable regulations, Lacy was required to bring the alleged discriminatory event (i.e. the inaccuracies in the evaluation and/or the failure to receive the increase) to the attention of the EEO counselor within thirty calendar days of the event. 29 C.F.R. § 1613.214(a)(1)(i). "Courts have held that the obligation to challenge a performance appraisal that is allegedly discriminatory arises at the time that the evaluation is issued to the employee, and a discrimination complaint is untimely if the allegation is later raised outside the limitations period upon the evaluation's use in a promotion proceeding." *Woolery v. Brady,* 741 F.Supp. 667, 669 (E.D.Mich.1990) (citations omitted). These claims were also rejected as untimely by the EEOC. (EEOC decision at 5, *Lacy v. Lloyd Bentsen,* Appeal No. 01924609 (March 19, 1993).) Hence, this claim must be rejected as untimely.

Lacy disputes this finding, attesting that she filed grievances with respect to her 1989 and 1990 evaluations with the union. First, a grievance to the union does not satisfy 29 C.F.R. § 1613.214(a)(1)(i) which requires that the matter be brought to the attention of the EEO counselor. Thus, these grievances are insufficient to demonstrate timely raised issues. In any event, Lacy has not indicated whether the grievances before the union have been resolved. In the absence of a final decision on the grievance, any action by this Court would be inappropriate.

In addition, Lacy has failed to allege that she brought the alleged acts of discrimination which resulted in the denial of her merit increases to the attention of the EEO counselor. *See Ang,* 932 F.2d at 545; *Woolery* 741 F.Supp. at 667 (plaintiff's failure to exhaust administrative remedies for challenges to two performance evaluations precludes claim of discrimination.) Accordingly, this claim is barred because of her failure to exhaust administrative remedies.

██ Even if the Court had considered the merits of her claim that she was not given a merit increase in retaliation for her prior EEO activity, a summary judgment would have been appropriate. Based on these assumptions, Lacy would be able to set forth a prima facie case for retaliatory discrimination. However, the Defendants have come forward with a legitimate, nondiscriminatory reason for the denial of the merit awards to Lacy, i.e., she did not qualify as evidenced by her low performance evaluations. The burden shifts back to Lacy who has failed to present any evidence or facts which would demonstrate that the proffered explanation was merely pretextual. Accordingly, the entry of a summary judgment would be warranted.

### IV

Based on the foregoing, this Court will grant the Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.